Good morning, Your Honors, and may it please the Court, Leah Spiro for Appellant Robert Rasheed. And I'll watch the clock and try and reserve two minutes for rebuttal. I'll start by focusing on the probation condition that requires Mr. Rasheed to fulfill 1,260 hours of community service because it's the most pressing concern to Mr. Rasheed, who has just been released. In particular, I'll focus on the practical concerns that make it plainly unreasonable, the alternatives that could make it reasonable on remand, and the application of the plain-errors standard as recently discussed by the Supreme Court in Rosales-Morales. First, the practicalities. It's clear from the outset that this sheer volume of hours is incompatible with Mr. Rasheed's uncontested need to maintain full-time employment in order to support himself and meet the policy goal of rehabilitation. I'm sorry, but just to get me on track, that amount of time is over what period? Over three years, Your Honor. And so the point that we made in our opening brief is that is approximately eight hours a week, although Mr. Rasheed has already been out a week, so now he has 16 hours next week. And that's on average. And the reality that is glossed over by just calling it eight hours a week is that it Mr. Rasheed can't simply show up and serve community service when his work schedule permits. There's not a drop-in center to do that, and he can't simply get it in one chunk one day of the week. Why not? Why can't he spend Sunday in community service or Saturday in community service? Two points on that, Your Honor. The first is that the district court was very explicit about saying that Mr. Rasheed will need to give 30-minute presentations to real estate groups for as much of the time as possible. So that means Mr. Rasheed will need to schedule these with various real estate groups around the Bay Area, travel to those different locations, and of course present them at the time that the real estate group has available for him to present the 30-minute talk that he is supposed to give. Another reality is that community service is not available to someone every day of the week. Typically, a probation officer will find an agency or multiple agencies that are able to facilitate community service hours, and then Mr. Rasheed will have to work with them to find out what their hours of operation are. Your argument, as I understand it, is not that the district court couldn't have imposed a community service condition, but that this particular one is unduly burdensome. That's correct, Your Honor. Why not go back, now that Mr. Rasheed is out of confinement, to the district court and in the first instance say, let me show you how this can't work. Exactly, and that's what we're asking for in this direct appeal. I understand, but my point is a little bit different. When it comes up in direct appeal, we have to address it facially. We don't know what the circumstances are of the defendant after his release from prison. Now you have circumstances after release from prison. If he were unemployable and totally unemployed, eight hours a week might not be a terrible thing. If he has the opportunity to get a job and they can be arranged, that's a little different. So my question is, why isn't this an issue to be taken up with the district court in a motion to modify the conditions of release? Well, a few points on that, Your Honor. First of all, I think the district court could use guidance from this court on this issue, and I think that facially we can show that this is just incompatible with his need to maintain full-time work. If it were fewer hours, if it were 600 hours, 400 hours, I think we would have a harder time saying on the face of it this is incompatible. But it's clear that he can't plug in eight hours a week, especially doing 30-minute presentations and still maintain full-time employment. The second problem with the suggestion of having Mr. Rashid, rather than on this direct review go to the court and ask for modification, is that he no longer has entitlement to representation in the district court. I can ask the public defender's office if they are able to take the case, but the reality is that probationers aren't entitled to free counsel, which, of course, I am on appeal, but I'm not his trial attorney and am not attorney of record in the district court. And that's why we pointed out in our reply brief that courts of appeal have decided not to kick the can down the road on this type of issue and make the probationer go to the district court at the time that it becomes clear that it can't be met. And the case we cited for that, that really describes that predicament, is the Seventh Circuit's case in United States v. Capas, which is in our reply brief at page 16. Can you refresh my recollection about what you told the district judge when he imposed this? Nothing was said by trial counsel, and here's why I think — And that's my difficulty. And my difficulty is that you're asking us to hold that the district judge who imposed a facially legal sentence made an error, even though nobody pointed out to him that it would be difficult for your client to do this. And that's why I'm wondering whether or not this isn't most appropriately raised, despite the difficulties you mentioned in a motion to modify. Again, a few points, Your Honor. The first is, I think it came about because the district court announced this formula and this number of hours at the sentencing hearing when he described what the community service conditions would be. So trial counsel walked into that hearing not knowing that it was on the table that his client — But didn't object. Didn't object. I admit, you know, he heard that and he didn't object. And I — All right. Then here's the other problem, following up on what Judge Horwitz commented on, is the standard of review is quite — quite forgiving for the district judge, right? It's abusive. It's abusive discretion. No, we can't just say, well, you know, we would have done it some other way. Or this, as you're saying, well, it's better to do X than Y. The question is what? Is it an abusive discretion, right? Is that the issue? Is that the standard of review? We'd like abusive discretion. I would say since trial counsel didn't object — It may be plain error. It may be plain error. But that leads to the Rosales-Morales case. And in that case, the Supreme Court recognized that unnoticed errors happen. And I think trial counsel — But the problem is that the difficulty here is that I don't see a guidelines violation here. Right. And that Rosales — that Rosales case involves the judge who made an improper guidelines calculation. But here's why Rosales applies, because the Supreme Court mentioned two factors that in particular warrant the plain error reversal under the plain error standard. The first is, is the error of the judge's own device? And that's why I think it's really important that the judge came up with this formula on the spot for trial counsel and announced it at the hearing. But the question is, why is that an error at all? Because it's incompatible with Mr. Rasheed's need to work. And the trial — Wait a minute now. Is that in the record? Did somebody make the argument, well, Your Honor, that condition of release is illegal because it's incompatible with his need to work and his need to work has precedence? Was that argument made? No, that argument was not made. But I think it's clear from this number of hours the district court recognized that he would need to work to support himself. And the irony is that a fine wasn't imposed because he didn't have any money, and it was clear that he would have to work. The argument may be a very good one on the merits. What we're — what I'm struggling with, I can't speak for my colleagues, is whether or not we can say this is such plain error, absent objection, that we ought to reverse the district court as opposed to sending Mr. Rasheed back to the district judge to explain the situation. Again, I would encourage the Court to look at Rosales-Morales and the fact that the Supreme Court said if the sentencing — sentencing errors are different than trial errors because they are easy to correct, and we already know this case is going back on the risk-notice condition, which the government has conceded has to be remanded under United States v. Evans. So if it's going back, I think we — it's easy to correct. There are alternatives. The district court can take a look at it again. And what the Supreme Court said is if the sentencing court creates this error — Sotomayor, if it's going back again anyway, why can't you raise it before the district court? I think — It's going to be representing him at that point, won't it?  But — trial counsel would be, but guidance from this court is important, pointing out that this is troublesome in light of the evidence in the record. What do you mean by guidance? You mean like, you know, it should be 600 hours? Is that the kind of guidance you're talking about? Well, that is a district court — Or it should be not more than two hours a week? Is that the kind of guidance you're talking about? No, I think that's within the — I don't think the court — this court has to give a specific numeric amount. I think it could say that this — What kind of guidance are you talking about? That this condition should be re-evaluated in light of the documented need of Mr. Rasheed to maintain — Well, there is no documented need here, is there? I'm sorry, Your Honor. But what is the documented need that's before us? Because the PSR acknowledges that there is — Mr. Rasheed needs $5,000 to live and only gets Social Security benefits for $1,700 per month, so there is at least $3,500 that he has to earn, and the district court noted that he has no meaningful assets, and he is going to need to support himself when he gets out of custody. Okay. Counsel, you've exceeded your time. We'll give you one minute for rebuttal. We'll hear from the government on this case. Okay. Thank you, Your Honor. I think we're going to hear from the government. Do you want to do that? I think so. I think it would, for me anyway, be a little cleaner if we — I agree with you. There are different issues, quite different. So would you put 10 minutes on for this as well? May I begin? Yes, please. May it please the Court, Jonathan Laskin, Counsel for the United States of America. I'll dive right into the community service condition that the court was — Well, before you do — Oh, sorry. Government agrees that we ought to remand for resentencing to remove the risk notice condition? For relief consistent with Evans, not necessarily to remove it. So we have to send it back for reconsideration in light of Evans? We agree that that is what the court should do, yes. Okay. And if that occurs, Mr. Rashid will still be represented by trial counsel? I believe that is correct, yes. Okay. I just wanted to make that. Go ahead. Turning to the community service condition, my colleague referenced at the very end the pre-sentence report about Rashid's need for renumerative employment. The PSR at 38 actually says that Rashid's plan for employment after he leaves prison is to open his own business. He's going to borrow money and start a gas station. He's not intending to work in a 40-hour-per-week job, or at least that was the record before the district court. And so the concept that this condition was inconsistent with what the district court would have understood to be happening upon release, which now has happened, but at the time this was decided had not. Let me just cut to the chase. When this case goes back, assuming that Mr. Rashid's counsel says he wasn't able to borrow the money for the gas station, but he wants to go to work at Wal-Mart 40 hours a week or whatever may be the case, would the government object to alteration of this condition in view of new circumstances if there are, in fact, new circumstances? If the circumstances justified it, we would not object to an alteration of the condition. I think that the ---- Well, do they? Do the circumstances justify it? I'm not aware of any change in circumstances.  So following up on what Judge Graber suggested, if we're going to vacate and remand anyway because of the risk condition, could we also just say in light of the fact that it's being remanded, the sentencing court should take another look at the community service hours in light of present circumstances or something like that? Would you object to that? I believe that the best course is to allow the defendant to raise this to the district court in the first instance because we don't know as we stand here, at least I don't know and I haven't heard them, what the changed circumstances are. But the government wouldn't oppose a motion if he urged changed circumstances. Correct. That's correct. You might say they're not sufficient, but you're not claiming that he's precluded from urging changed circumstances. Absolutely not. No. He can move to modify the conditions for his release at any time. I'd like you to address an issue that occurs in several of the cases in which your colleague didn't have time to get to, and it's the one of effect on interstate commerce. I'm interested in what the government's evidence was with respect to that issue. So the government's evidence essentially took two forms. One was that you have a fundamentally interstate transaction based on the location of the parties to the transaction, and the other was sort of a follow the money evidence. You can see the money moving through interstate commerce. Focus on the second one for me because I'm not sure how persuasive I find the first one. Tell me what the evidence was about where the money moved. So, for example, conspirator Denali Liu testified that she endorsed cashier's checks to pay for a property. Those checks went to a trustee in Arizona. She received back from the trustee in Arizona a letter with essentially a refund because if you're using cashier's checks, the denomination is not going to match the purchase price exactly. She's located in California. She is located in California, along with the deed for the property, and that's in Diaz's excerpts of record at 1044-48. There are also a FedEx slip and a cover letter with a matching tracking number that reveals a check going to an Arizona trustee. I'm sorry, from an Arizona trustee to a beneficiary in Florida. Supplemental excerpts of record at 113 to 115. And then there's, of course, the testimony from the FBI agent who reviewed a number of these cover letters and checks that were sent out of State at the Diaz excerpts of record 1,122 to 24. Was this a multiple count indictment? Originally, it was. By the time of trial, it was a single count indictment. So you didn't need to show for each transaction an effect on commerce, as long as you showed an effect on commerce from the conspiracy? Actually, Your Honor, for the Sherman Act, I don't think we even need to show that. The Supreme Court in Summit Health has said that the Sherman Act's interstate commerce element extends to the full reach of Congress's commerce program, so it looks at the line of commerce affected as opposed to the— You think we're back? Even after Lopez, we're back to the days of Ollie's Restaurant? If anybody came to California to buy property, that would be enough? Oh, no, I'm sorry, Your Honor. Maybe I misunderstood your question. You've got evidence that this agreement affected commerce. You don't have to show it for each separate transaction. I absolutely agree. That was my question. Yes, we have evidence. What's the line of commerce here? Foreclosures? I think that you would say foreclosure sales. So in Summit Health, for example, they had an ophthalmologist, and they didn't ask the question whether that individual ophthalmologist affected interstate commerce. They said, if I'm looking at the market for ophthalmology services, I believe, and I can't remember exactly where, but whatever county. So what was the evidence about the market for foreclosure services? So there's no evidence on that because in a per se case, you don't prove markets, which is why we proved interstate commerce by simply showing that there was actual interstate commerce occurring. That's why the ophthalmologist case is a little bit more difficult for me. But you did show in this case is that this agreement affected interstate commerce because funds from the foreclosure auctions were sent to people out of state. I completely agree, Your Honor. I think maybe I signed some of those. Ohio and Florida and Arizona primarily. Florida, Arizona, and also J.P. Morgan Chase and Ohio. Columbus, Ohio. Yep. Was a substantial place to which they were sent. So just on that particular one, another piece of evidence, Excerpts of Record 266, question Ms. Chu, where did CRC send the funds from the foreclosure auction for this property? Answer, they were sent to J.P. Morgan Chase Bank in Columbus, Ohio. And from what state were the funds sent? Answer, California. That's interstate commerce. And I just note that the cases that Mr. Rashid is relying on in his brief actually are mail fraud cases. And they're talking about the element in mail fraud cases that is the use of the United States mail interstate, which is substantively different from an element that is only looking for interstate commerce. And he uses that to make the point that an electronic transfer wouldn't count. And we've directed this court to opinions, including the Massari opinion, that says interstate electronic transfers do cover this issue when you're talking about interstate commerce, as opposed to a violation of the mail fraud statute and the use of the mails element. If there's no further questions on that, I might briefly address the financial monitoring condition, if the court has questions on that. I don't. Financial, financial. The conditions that require Rashid to consult with the probation officer before. What about addressing, you know, the hours? Oh, sure. You think you've done that sufficiently? Sorry. I think we have done it in the briefs. What I would say is I don't believe that on its face requiring someone to work eight hours of community service a week is too much. And I also believe that the touchstone of the reasonableness inquiry is whether the district court considered the right things, essentially, when imposing the condition. And in this case, the district court did consider the 3553A factors. He did consider the guidelines. He actually expressly applied the antitrust sentencing guideline to reach this conclusion.  To me, the condition seems a little bit ambiguous because it doesn't tell you whether or not, say, time spent in preparation of these talks counts as community service, right? It doesn't say anything either way, does it? It does not say anything either way. You think it does? No, no. I am agreeing with you. No, no. You think that time counts as community service in preparing your talk? I think that that's a question best directed to the district court under a motion to modify the conditions if Rashid is not happy with the way the condition is being applied. Mr. Rashid. The way the probation officer counts the hours. Exactly. I think, again, that's something where it's helpful to have a record of how exactly the condition will happen, and this is why we have plein air review. Presumably, had this been raised, the district court could have clarified whether or not he intended that. Right, because he requires written materials to accompany the presentations, and presumably that takes time, so. Oh, yes. I see my time has elapsed, so thank you, Your Honor. I would ask that with respect to Mr. Rashid, the Court affirm the convictions and sentences with the exception of the risk notice condition. Okay. Thank you, counsel. Ms. Spiro, you used your time, but you may have a minute for rebuttal. Thank you. So on the interstate commerce piece, if this were a civil Sherman Act case, it would be different because I think they met the preponderance standard with their evidence. You could potentially guess that the funds cross state lines, but with the burden of proof being beyond a reasonable doubt. What is their guess when someone says, I was in California, I sent the money to a location in another state, and they sent me money back? Why is that a guess? That's not what Ms. Lu said. She said that it went to the trustee, and the trustee, she did not personally send it. The crier sent it. No, Ms. Chu says that it was that money was sent from California to Ohio. Ms. Chu said that her department's standard practice was to mail the payment, but then they had J.P. Morgan's expert come up, who is the recipient of the funds, and say that they process all of their transactions electronically, and I think very notably Ms. Chu works for a subsidiary company of J.P. Morgan, and so oh, what? What's going to weigh to the evidence as opposed to the sufficiency of it? Because you can't draw a reasonable inference given the way that the J.P. Morgan testimony undercuts Ms. Chu saying that the standard practice is to mail it. J.P. Morgan is saying the standard practice in our bank is to do electronic transfer. You also have the documents. Why is that insufficient? Because the question is interstate commerce, not an interstate company. I mean, you seem to be saying that it has to go from company to company rather than from state to state, and that doesn't seem to be the requirement. Because as we briefed, the checks could have been deposited with J.P. Morgan in California. They could have, but they weren't. There was no testimony that they were. The experts said that they could have. J.P. Morgan's ---- But that introduces a reasonable doubt. If J.P. Morgan's expert is saying ---- Well, that seems like a jury issue, doesn't it? What we're saying is that didn't meet, that a juror could not take that testimony and here they could have been deposited in California. They could have taken Ms. Chu's testimony, and you agree that we send it to somebody out of state, to J.P. Morgan out of state. That's our standard practice. If they believe that testimony, that would establish interstate commerce, would it not? I think if there hadn't been ---- No, just ---- Yes, standing alone. So your point was, well, there was other testimony which cast doubt on her testimony, and therefore there couldn't have been sufficiency. But that's not really our standard, is it? There's conflicting testimony, and we take the testimony in the light most favorable to the government. But you can't take her ---- you can no longer accept that ---- Well, the expert says that our standard practice is different than what she says. He may be wrong, he may be right. She may be wrong, she may be right. That's why we have ---- He may have deviated from the standard practice. But then the government has improved it beyond a reasonable doubt because the new expert has introduced doubt about how it was actually transferred. I think we understand your position. Thank you, Your Honor. And we've exceeded your time. Thank you so much. The Rasheed case is submitted, and we'll now hear argument in Mr. Florida's appeal. Good morning, Your Honors. May it please the Court. Jeffrey Jones for the appellant, Alvin, Florida. Mr. Florida's constitutional right to present a complete defense required instruction on his theory of defense. The district court refused his request to instruct the jury on multiple conspiracies, which was his primary and most viable theory of defense. The instruction that was given, which defined bid rigging, told the jury that if the agreement is the crime, that instruction without Model 822 on multiple conspiracies didn't give the jury an opportunity to fairly consider Mr. Florida's theory of defense. Wasn't his theory that he wasn't a party to this conspiracy? I believe in the retrial his attorney ---- No. But your argument was there may have been a conspiracy. We don't have to prove that there wasn't. But the government didn't prove that he was part of the conspiracy that they showed. Correct? His theory of defense in the second trial was that the government didn't make its case. And it's ---- I understand. That's a conclusion. I'm asking for ---- Okay. Well, in that ---- Now listen to me before you answer. I take it his theory of the defense was even if the government showed that there was a conspiracy among others, they didn't show that I was a part of that conspiracy. Correct? I don't believe so, Your Honor. That wasn't his theory? No, sir. His theory was that no conspiracy was shown at all? His conspiracy, yes. His conspiracy and his theory of defense ---- Well, but see, if his argument that no conspiracy was shown at all, then I don't understand the prejudice from failing to give a separate conspiracies instruction. Because in the first trial, the theory was that you may have ---- that the government may have shown illegal conduct. It may have shown agreements that were ---- Right. That violated. But it didn't show the agreement alleged in the indictment. Okay. Now, I understand that. And that's why I'm asking at the second trial, if that was your theory, then I understand your objection. But if your theory was that my client didn't do anything wrong at all, then I'm not sure why a multiple conspiracies instruction was necessary. Because of the theory in the first trial was the theory counsel wanted to pursue in the second trial and was precluded from doing so by the refusal. Well, I don't see that he was. The judge, he made the argument in closing. He made the argument. The judge didn't preclude him from making the argument. The judge just didn't give a multiple conspiracies instruction. Well, in the ---- in counsel's closing argument, I think it was ---- I think the contrast between the first trial and second trial closing arguments demonstrates that. My right in saying the judge didn't say, no, no, you may not make an argument about multiple conspiracies. No, it was allowed. Okay. So he didn't preclude him from pursuing that theory of defense. The ---- Correct? Yes. But when I used the word preclude, what I meant is the failure to instruct. Okay. That's very different than preclude. And the instruction given precluded it. Okay. So let's focus on the instruction given. Okay. Why doesn't the instruction given allow an acquittal if somebody shows that he was a member of a different conspiracy than the one the government proved? Because it simply says if the conspiracy charged, which is ---- it defines bidrigging, what a bidrigging agreement is. It's an agreement to restrain competition. And then it says if the conspiracy as charged existed for any period of time, it was unlawful. That's your ---- Now, focus on the defendant's participation in the conspiracy. What does the instruction say? About the defendant's participation. Yeah. I mean, it's not enough that there be a conspiracy, that you have to show that the defendant participated in it. True. So what would the ---- what was the instruction about his participation? I'd have to refer to the language of the instruction, Your Honor. Do you ---- Well, I thought the government ---- I thought the judge said you must show that he was ---- He only has to participate in ---- You have to show that he agreed to participate in the conspiracy. I understood. If the government ---- if the government proves the overall conspiracy, the complete overarching conspiracy, then he only has to participate in it. Well, but isn't that the whole theory of this case? There was a system of bidrigging. Yes. And it had a number of individual incidents that ---- through which this overarching conspiracy was carried out. But that doesn't mean that there were multiple conspiracies. And I don't ---- I actually have difficulty understanding what these ---- what your client's theory is. The ---- if the jury was able to understand that any conspiracy doesn't ---- just any conspiracy doesn't satisfy the indictment, it has room, then, to have a reasonable doubt whether the one conspiracy charged was proven. Let me ask Judge Graber's question a little bit differently. Give me an example of evidence in the record of another conspiracy. What's the other conspiracy that's ---- does the evidence establish? There would be a conspiracy as ---- potentially a conspiracy as to each individual auction that was rigged. Except that's not the way that's ---- that's not the way this case was tried by the government. The conspiracy, the agreement, is an agreement to a system that is unlawful. And these individual events are carrying out that. It's like saying a drug-selling conspiracy isn't one conspiracy because you sold drugs to 10 people, and so you have 10 ---- you have 10 sales, but you don't have 10 conspiracies. And the same is true here. The government proved or the jury found that the government had proved a single conspiracy to rig the bids. That is a hard thing to say. And they indeed did it in a bunch of instances, but that doesn't mean there were a bunch of conspiracies. And I guess I have trouble following why you think there were multiple conspiracies. Because if the jury doesn't understand that there can be ---- that any conspiracy doesn't satisfy the indictment, then it ---- where's the possibility for reasonable doubt the government ---- Sotomayor, but the jury was instructed that the government had approved the conspiracy in the indictment. It wasn't. It was instructed that. So proving some other conspiracy doesn't work. Well, it's told if the ---- for instance, the jury is told that the conspiracy can exist for any period of time in the bid-rigging instruction. And now, the overarching conspiracy is a 30-month conspiracy. It's not a conspiracy that can exist for any period of time. I'm ---- the point is that the bid-rigging instruction that was given on ---- that defines it essentially tells the jury that any agreement to rig bids is illegal. It conflates the conspiracy charge in the indictment with any conspiracy to rig bids. But again, focus on what the judge said about each individual's participation. I'm looking for the language, and I'm having difficulty finding it right now, but I think the judge said you have to ---- before you can convict any defendant, you must find that that defendant was part of the conspiracy, the one alleged in the indictment. Yes, part of the conspiracy. And there's only one conspiracy alleged in the indictment. Uh-huh. And before ---- And your argument is that your client was not part of that conspiracy. The argument was that the government didn't prove an overarching conspiracy. See, that's a ---- that's a sufficiency of evidence argument. I understand that. Uh-huh. What I don't understand, what I'm having difficulty, like Judge Graber, with, is the notion that, therefore, you were entitled to a multiple conspiracies instruction, as opposed to just an instruction that said they've got to prove the conspiracy. Because he's ---- the theory of the case is multiple conspiracies, which makes sense because the jury can conclude, yes, there were bid ---- there were agreements here to restrain competition, yes. But that's not ---- but ---- and that might be a conspiracy, but it's not the conspiracy. And there wasn't room ---- there wasn't room for that consideration because of the instructions given, because of the lack ---- because of the lack of the multiple conspiracies instruction. Did your ---- your other argument, I think, that was unique to you was that there was some problem in ---- in closing with the government saying that the homeowners might be impacted by the conspiracy. That's true. Isn't that ---- isn't that facially true? If we have a foreclosure auction and the credit bid is ---- and the bid at the ---- and the eventual bid at the auction exceeds the credit bid, exceeds the first mortgage, sometimes homeowners will be impacted by ---- by depressing the price, right? They will potentially be impacted. There was no evidence that any individual homeowner was impacted. Well, but he said the corruption targeted auctions that were designed to get the highest possible price for the lenders and the homeowners. That's true. Auctions are designed to get ---- They were designed to ---- Yeah. That's true about the design. I think the repetition of those arguments, it was an argument to cast the individual homeowner as victim, and that was ---- There was no objection made, right? It was plain error review. So it's plain error review. Yes, Your Honor. Absolutely. Were there any other arguments that were unique to Mr. Florida that we haven't heard yet? Your Honor? Any other arguments unique to Mr. Florida that you haven't heard? I've raised two claims. Right. Yes. And we've heard them both. That's true. Okay. I just wanted to make sure. There's so many defendants here. I was going through my list. I wanted to make sure we heard all the arguments unique to your client. And I'll reserve my time for rebuttal. You may do that. Thank you. Thank you. 19 seconds. Well, we'll give you more than 19 seconds. May I begin, Your Honor? Yes, please. May it please the Court. Again, Jonathan Laskin, counsel for the United States. I'll start with the multiple conspiracies argument. Judge Graber, Judge Hurwitz, I think that your questions about what was going on here, what is the argument, the argument here is very similar to actually something that this Court dealt with and disagreed with in the Kearney opinion. In that case, the Court rejected an argument about multiple conspiracies or joinder of conspiracies, saying that, quote, appellants confuse separate acts at separate times with separate conspiracies. Almost any venture, criminal or legitimate, is analyzable into a series of bits, each of which, in turn, is characterizable as an independent planner goal. I think that's what's going on here. And the Court went on in that decision to say, the citation is 560 F. 2nd, 1358 pages. This is at pages 1362 to 63. The Court went on to say, appellants also urged that they were entitled to a jury instruction on the potential for finding multiple conspiracies. We disagree. Here's, on the surface, what's troublesome about this. It may not be legal error. There's two trials here. First trial, Judge Hamilton gives a multiple conspiracy instruction, and the jury hangs. The second trial, Judge Donato doesn't give one, and the jury convicts. That doesn't mean it's error. It does seem to mean that it might have made a difference. Well, Your Honor, I agree that the first trial is a data point. I would point out that there were a lot of things that were actually different between the trials. We tried to do a lot of things better in the second trial. We added, so we replaced two witnesses, one of whom was extensively impeached and became the centerpiece of closing arguments for defendant, a witness, Mr. Wong, with witnesses who are less subject to cross-examination. We added one of those witnesses who we replaced, Mr. Wong, with testified to guilty knowledge on Florida's part. He's the witness who testifies, it's Mr. Francois, about Mr. Florida making jokes about conducting rounds in jury rooms. We also added a witness to shore up our proof on interstate commerce in the second trial. The trial team was actually changed. You had a new prosecutor substituted in. So I think that the first trial, it is a difference between the two trials, but I think inferring that that made the difference, I would not go so far. But I do, to your point, it is a difference. And I think that Judge Donato's decision actually was correct, which is that it's redundant. And I would note that at the end of the second trial, counsel for Mr. Rashid, who was the counsel who was primarily making this defense, actually told the court as much. He said to the court that it didn't need to give the instruction, and that it also shouldn't give two other instructions that the government was requesting related to conspiracies, because they were all redundant. And Judge Donato was correct to actually strike all three of those instructions, two of them over the government's objection, one of them over defense counsel's objection. So moving forward, my colleague referenced the fact that the jury may not have understood what the government needed to prove to prove the conspiracy. He said that the jury instructions would permit conviction on any conspiracy to rig bids. And he referenced specifically that they may not be aware of the 30-month duration of the conspiracy. Judge Donato's final instructions actually did tell the jury that it was a 30-month long conspiracy. Granted, when he was talking about the statute of limitations, but excerpts of record at 209, the final jury instruction stated, quote, the indictment charges that the conspiracy began at least as early as May 2008 and continued to at least December 2010. So to the extent that there's a concern that there was no language in the final jury instructions that would explain to the jury that this was one 30-month long conspiracy, that language was there. And I want to address briefly, which I think the court mentioned, that there's no prejudice even if this was some sort of an error in this case. Because the reason for giving this instruction is to avoid a prejudicial variance, to cut off a prejudicial variance from occurring at trial. I believe the briefs adequately addressed this, but there wasn't even sufficient evidence to show a variance in the first place. There might have been evidence of sub-agreements within the conspiracy, but that evidence alone does not give rise to a variance. And Florida has not argued for or explained how even if there was a variance, which again, we don't think there was, that the prejudice, that it would have been a prejudicial variance, whether by spillover guilt or surprise, for example, at the trial. If there are no further questions on that, I'll turn to the argument about closing. I don't think there are, go ahead. Okay, so just very briefly on the closing argument. I agree with everything that the court mentioned, and obviously our position is that there was no statement that a specific homeowner was harmed, and that the harm to the competitive process depriving all groups of beneficiaries of the benefits of a competitive auction and the opportunity for a competitive auction was fully supported in the record. I do just want to mention that the idea that there was a thrust in this argument towards punishing the defendants for what happened to homeowners. Counsel for the government, both in the initial closing argument and the rebuttal, made clear that they were not asking for a conviction on this basis. In the initial closing argument, the jury was told by counsel for the government, the court instructed you that lawyers are not witnesses and that what is said in closing is not evidence. That's because the facts are the facts, and the facts as presented by the United States show beyond a reasonable doubt that the defendants are guilty of a conspiracy to rig bids at the Alameda County foreclosure auctions. Supplemental excerpts of record at 369.  Didn't cause a financial crisis, but they benefited from it. They didn't foreclose on these people, but they found a way to make money and benefit from those foreclosures and continued to tell the jury that, quote, this case is about what the defendants did. And then went on to explain that defense counsel was, quote, asking you to set aside the evidence in this case to ignore the mountains of proof we have brought you, and then delved into the facts of the case. That's at supplemental excerpts of record 402 to 403. And if there's no further questions, Your Honor, Your Honors. I don't believe we have any additional questions. So we would ask the court to affirm the convictions and sentences below. Thank you, Mr. Jones. You may have two minutes for rebuttal. A couple of points. My colleague said that the instructions, pointed out correctly, that the instructions told the jury there was a 30-month conspiracy. And the judge did instruct the jury on that. But the other instruction given on the defining the agreement flatly contradicted that and said that the conspiracy could exist for any period of time. So there's a conflict there in the instructions. The requested instruction would have cleared that up, that distinguishing between the specific conspiracy charged and some lesser conspiracies. With regard to that and the other instructions, I think that's a good point. Sotomayor, can you address how your client would have been prejudiced by the absence of these instructions, given the nature of his defense? How he would show prejudice? Yeah. Well, if the instruction, what he needs to show is that the instructions given didn't adequately cover his defense theory. In that case, reversal is required. But his defense theory, I take it, and that's why I asked you before, wasn't that I was part of a conspiracy for four months or six months or seven months, and then I withdrew. His defense theory was that I was never a part of the conspiracy at all. Well, if I can qualify that. So I'm trying to figure out how the time period of the conspiracy. Not that I was never part of the conspiracy, but there was no the conspiracy. Okay. Even better. So there was no conspiracy. But I'm still not sure why the time period issue then matters. Because, because, because, now, subagreements don't preclude a conspiracy. But there were potentially any number of subagreements here. Agreements among subsets of these, how many thousands of participants in this conspiracy in all the exhibits? There's a potential for subagreements. And those could be seen as lesser conspiracies, as conspiracies of lesser scope than the one charged. And without the multiple conspiracies instruction, the jury didn't have a vehicle to understand that. And those were, those were defense counsel's words before the court. She doesn't have the vehicle to present her theory of defense. And she had a constitutional right to present that theory. Thank you, counsel. Thank you, your honor. The cases just argued are submitted. We appreciate helpful arguments from all counsel. And we're adjourned for this morning's session. We'll be back to talk to students and anyone else in, I would guess, probably 20 minutes or thereabouts. Thank you.
judges: Tashima, Graber, Hurwitz